IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARL GALLO,                          )
                                     )
                 Plaintiff,          )
                                     )
vs.                                  )          Case No. 3:19-CV-00624-MAB
                                     )
NURSE PROSISE, ET AL.,               )
                                     )
                 Defendants.         )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court are two motions, and supporting memoranda, for summary judgment filed by Defendants Jason Orkies and Jennifer Prosise (Docs. 55, 56) and Defendant Greg Morgenthaler (Doc. 66, 67). For the reasons set forth below, the motions are GRANTED.

## PROCEDURAL BACKROUND

Plaintiff filed his complaint on June 7, 2019, pursuant to 42 U.S.C. § 1983, alleging that medical professionals at Big Muddy Correctional Center ("Big Muddy") retaliated against him for filing a grievance about inadequate medical care by charging him a $5.00 copayment for treatment of his gastroesophageal reflux disease (Docs. 1, 7). After a threshold review by this Court, pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on one First Amendment count:

> **Count 1**—Defendants retaliated against Plaintiff for filing a grievance against Big Muddy's medical staff on June 19, 2017 by verbally harassing him and charging him a $5.00 copayment for treatment of GERD thereafter,

in violation of the First Amendment.

(Doc. 7).

On December 13, 2019, Plaintiff submitted a proposed amended complaint, which was docketed as a motion for leave to file an amended complaint (Doc. 31). Plaintiff did not seek to add new claims; rather, through this amended complaint, Plaintiff attempted to support his arguments with additional materials. Additionally, Plaintiff's Second Amended Complaint is a verified complaint.[1] The Court granted Plaintiff's motion on April 24, 2020 (Doc. 36), and Plaintiff's verified complaint was filed on April 27, 2020 (Doc. 37).

Defendants Orkies and Prosise filed their motion for summary judgment on November 18, 2020 (Docs. 55, 56). Defendant Morgenthaler[2] filed his motion, and supporting memorandum, for summary judgment on February 3, 2021 (Docs. 66, 67). Plaintiff filed one response on February 11, 2021 (Doc. 69).

## FACTUAL BACKGROUND

Plaintiff Carl Gallo is currently an inmate in the Illinois Department of Corrections ("IDOC") incarcerated at Graham Correctional Center ("Graham") (Doc. 37). The events at the center of this lawsuit took place at Big Muddy. Plaintiff was transferred to Big

---

[1] Plaintiff's complaint is a verified complaint, which means he declared under penalty of perjury that the allegations were true before signing it. *See Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996). Therefore, the complaint is the equivalent of an affidavit and can be considered as evidence at summary judgment. *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (quoting *Ford*, 90 F.3d at 246).

[2] On the docket, Defendant Morgenthaler is listed as "Defendant Sullivan," as Defendant Morgenthaler became the Acting Warden at Big Muddy on June 1, 2020 after Defendant Sullivan left the position (and after Defendant Sullivan was added as a Defendant). Under Federal Rule of Civil Procedure 25(d), Defendant Morgenthaler is substituted for Defendant Daniel Sullivan. *See also* Doc. 54.

Muddy in May 2017 after having issues with the nursing staff at Hill Correctional Center ("Hill"). Plaintiff believed these issues, including alleged retaliation, were related to the charge for which he is currently incarcerated (Doc. 56-1, p. 21). Defendant Jennifer Prosise is a licensed practical nurse and has been employed by Wexford Health Sources, Inc. ("Wexford") at Big Muddy since September 2014 (Doc. 56-2, p. 1).[3] Defendant Jason Orkies was employed by Wexford as a licensed practical nurse at Big Muddy from April 3, 2013 to September 27, 2015 (Doc. 56-3). On September 28, 2015, Defendant Orkies became the Director of Nursing for Wexford at Big Muddy, a position he held until June 24, 2017. *Id.* At that time, he was promoted to Regional Manager for Wexford. *Id.* He remained the Regional Manager until February 10, 2019, when he became the Director of Nursing for Wexford at Illinois River Correctional Center. *Id.*

Copays for IDOC inmates were set by statute until the copay requirement was eliminated on January 1, 2020 (Doc. 56, p. 3). Prior to this date, though, the relevant parts of the statute read as follows:

> The Department shall require the committed person receiving medical or dental services on a non-emergency basis to pay a $5 co-payment to the Department for each visit for medical or dental services…A committed person who has a chronic illness, as defined by Department rules and regulations, shall be exempt from the $5 co-payment for treatment of the chronic illness…A committed person shall not be subject to a $5 co-payment

---

[3] Defendant Prosise attached an unsigned affidavit to her motion for summary judgment. In the supporting memorandum, Defendant Prosise detailed that she would substitute the signed affidavit for this unsigned version, but to date, there is only the unsigned version in the record (Docs. 56-3, p. 3; 56-2). Because this affidavit is unsigned, the Court will not consider it in this Order. *See Peters v. Gilead Sciences, Inc.,* 429 Fed.Appx.623, 625 (7th Cir. 2011) (finding that the lower court's rejection of an unsigned "affidavit" as procedurally deficient was not an abuse of discretion). *See also Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir. 1994) (holding that an unsigned affidavit has no evidentiary significance).

for follow-up visits ordered by a physician who is employed by, or contracts with, the Department.

*See* 730 ILCS 5/3-6-2(f) (effective through December 31, 2019)

Plaintiff testified, and Defendant Orkies agreed, that prisoners did not have to pay copays once their condition was considered a "chronic condition" by a facility's doctor (Docs. 56-1, p. 36; 56-3, pp. 4-6).

While still housed at Hill, Plaintiff was seen for his annual general medicine chronic clinic appointment for his health issues on February 19, 2017 (Doc. 56-4, p. 6). The ailments that were addressed included asthma, BPH (enlarged prostate), and hypothyroidism. *Id.* Plaintiff's list of medications at this time included 40 mg of Prilosec, which is used to treat heartburn and acid reflux (*Id., See also* Doc. 56, p. 4). While Plaintiff concedes that the progress note only indicates he was treated for asthma, BPH, and hypothyroidism, he states he was also seen for GERD (commonly known as heartburn and acid reflux). Plaintiff points to a portion of the record in which an outpatient progress note, dated August 29, 2016 (prior to this February 2017 visit), details that Plaintiff is diagnosed with GERD (Doc. 69, p. 36). Additionally, in Plaintiff's transfer summary (dated May 24, 2017, three months after the February 2017 visit), Plaintiff's chronic conditions include ulcerative colitis, asthma, BPH, and GERD (*Id.* at p. 44). In fact, the record indicates that Plaintiff was diagnosed with GERD and treated for it dating back as early as 2003 (*Id.* at p. 24).

On May 20, 2017, Plaintiff was seen at nurses' sick call at Hill for complaints of chronic indigestion (Doc. 56-4, p. 1). The nurse noted that Plaintiff was taking 40 mg of

Prilosec daily for indigestion and also had a history of ulcerative colitis. *Id.* Plaintiff was given 24 Tums tablets and he submitted a payment voucher for his $5.00 copay. *Id.*

On May 25, 2017, Plaintiff was transferred from Hill to Big Muddy (*Id.* at p. 2). GERD was listed as a "chronic conditions/problems," for which Plaintiff was prescribed Prilosec. This Health Transfer Summary indicated that Plaintiff had been admitted to the chronic clinic for Asthma and general medicine chronic clinic for BPH, hypothyroidism, and ulcerative colitis, which is an inflammatory disease that affects the large intestine and rectum. *Id.*

On May 28, 2017, Plaintiff was seen by a nurse at Big Muddy with complaints of heartburn and indigestion. *Id.* Plaintiff reported feeling a burning inside his chest that began approximately a month prior to this visit. He was provided with 24 Tums tablets and referred to a doctor for further evaluation. Also noted on the outpatient progress notes is that the Prilosec is not working. *Id.*

Incarcerated individuals can receive Tums from a nurse without seeing the doctor or nurse practitioner (Doc. 56-1, p. 32). Nurses at Big Muddy are only allowed to dispense a three-day supply, or 24 tablets total, of Tums at a time (*Id.* at p. 30). Tums are available in the Big Muddy Commissary (*Id.* at p. 33).

On May 29, 2017, Plaintiff was seen by Defendant Prosise, and Plaintiff stated that his issues were addressed during this nurse sick call (Doc. 56-4, p. 4). On May 31, 2017, Plaintiff was seen by a nurse practitioner named Gary Gerst for back pain and ulcerative colitis (*Id.* at p. 5). Plaintiff told Mr. Gerst that he was supposed to have a follow-up appointment with a gastro-intestinal doctor for his ulcerative colitis prior to his transfer

from Hill to Big Muddy. *Id.* Mr. Gerst referred Plaintiff to the doctor to evaluate him for a follow-up with a gastro-intestinal specialist. *Id.*

On June 1, 2017, Plaintiff was scheduled for a nurse sick call, but was not seen because he was at the commissary (Doc. 56-5, p. 1). On June 7, 2017, Plaintiff was seen by nursing staff for complaints of heartburn and indigestion (*Id.* at p. 2). The note indicates that Plaintiff's Prilosec was not working. Plaintiff was given 24 tablets of Tums and a 3-day supply of Zantac. It was also noted that Plaintiff had already been referred to the doctor. At this appointment, Plaintiff was not charged a copay. *Id.* Plaintiff was also seen on June 7, 2017 for burning in his center "upperstomach." *Id.* He was not charged a copay. *Id.*

On June 14, 2017, Plaintiff was seen by Defendant Prosise. During the visit, Plaintiff indicated that he needed Tums for his heartburn (*Id.* at p. 3). Defendant Prosise noted that Plaintiff was waiting for a follow-up with the doctor, and had been seen the previous day (6/13/17), during which he was given medication. *Id.* Plaintiff returned to the healthcare unit ("HCU") on June 16, 2017, where he returned the Prilosec, stating that it was causing abdominal pain (*Id.* at p. 6). Plaintiff was given Pepcid "per protocol" (*Id.* at p. 7). Plaintiff was seen again on June 16, 2017 for upper stomach and esophagus burning. *Id.* He was not charged a copay. *Id.*

On June 19, 2017, Plaintiff wrote a letter to Deborah Isaacs, the HCU administrator, complaining that he had not received extra toilet paper (Doc. 56-6, p. 1). Plaintiff detailed in this letter that the nurse he spoke to about this issue refused to look at his permit. Plaintiff refers to this nurse as the "AM nurse." *Id.* Additionally, Plaintiff described that

the nurse said she would check about the toilet paper issue and bring some back if he was due extra toilet paper, but she never returned. *Id.* Plaintiff outlines that all he wanted to do was receive medical treatment and supplies without "unnecessary stress and bad attitude by HCU staff." *Id.* While Plaintiff did not mention any nurses by name in this letter, he testified that it was Defendant Prosise who refused to give him the extra toilet paper (Doc. 56-1, p. 64). Defendant Orkies asserts that he never knew Plaintiff wrote this letter (Doc. 56-3). Plaintiff contends that both Defendant Prosise and Orkies knew about the letter because Defendant Orkies confronted him about the letter, in front of Defendant Prosise, in the HCU on June 20, 2017 (Doc. 56-1, p. 64).

On June 20, 2017, Plaintiff went to the HCU for care. When Plaintiff arrived in the HCU, Defendant Orkies contends that he witnessed Plaintiff causing a disruption (Doc. 56-3, p. 2). Defendant Orkies described Plaintiff as being "argumentative and yelling at one of my nurses." *Id.* Defendant Orkies describes that he spoke to Plaintiff directly and told him that he cannot yell and scream at the nursing staff. Plaintiff explained he was upset because he was due an extra roll of toilet paper. *Id.* According to Defendant Orkies, Plaintiff apologized and was issued an extra roll of toilet paper. *Id.*

Plaintiff, relying on his verified complaint, contends that he never yelled or had any arguments with any nurses because if he did, security staff would have intervened (Doc. 69, p. 11). Plaintiff explains that Defendant Orkies called him to the nurses' station when he entered the HCU, and chastised him for writing his June 19 letter to Ms. Isaacs. *Id.* Plaintiff describes that Correctional Officer Tarr was seated at a security desk five feet away from where Plaintiff and Defendant Orkies had their conversation, and Plaintiff

knows Correctional Officer Tarr would not allow any prisoner to yell at staff (Doc. 69, p. 11). Essentially, Plaintiff argues that had he yelled, there would be disciplinary documentation about this interaction. *Id.* Plaintiff described this situation similarly in his deposition, explaining that he was called back by Defendant Orkies, in front of Defendant Prosise, when he arrived at the HCU and was chastised by Defendant Orkies for the June 19, 2017 letter (Doc. 56-1, p. 55). Plaintiff testified that Defendant Prosise was present the entire time while Defendant Orkies scolded Plaintiff (*Id.* at p. 59).

Immediately after this interaction with Defendant Orkies, Plaintiff was seen by Defendant Prosise for complaints of burning in the epigastric region, which is under the ribcage and above the belly button, which he explained he experienced for "years" (Doc. 56-5, p. 10). Plaintiff was given Tums and Zantac during this visit, and charged a $5.00 copay. *Id.* Plaintiff also had blood taken for a TSH test, which is used to monitor prostate issues (*Id.* at p. 11). Defendant Prosise's notes indicate that Plaintiff has already been referred to a doctor (*Id.* at p. 10). Plaintiff testified that Defendant Prosise was rude during this interaction (Doc. 56-1, pp. 56-58).

On June 25, 2017, Plaintiff filed Grievance 46-7-17 (Doc. 56-7, p. 12). In this grievance, Plaintiff describes being accosted by Defendant Orkies during his June 20, 2017 visit to the HCU. Plaintiff describes that Defendant Orkies chastised him for writing his June 19 letter to Ms. Isaacs, for "getting in [the nurses'] faces," and writing letters complaining about the nurses (*Id.* at pp. 12-13). Immediately after this interaction, Plaintiff describes that Defendant Prosise took his vital signs and went through the heartburn/indigestion protocol sheet. *Id.* After being treated, Defendant Prosise handed

Plaintiff a copay voucher for $5.00, which plaintiff refused to sign, as he contends his GERD is a chronic condition, for which he should not be charged (*Id.* at p. 13; Doc. 69, p. 12). The counselor response to Grievance 46-7-17 states that all inmates are charged a $5.00 copay for "requested, non-emergency treatment" and that "(o)nce determined to be chronic by the physician, offenders are not charged" (Doc. 56-7, p. 12).

On June 26, 2017, Plaintiff submitted a request for nurses' sick call, but was not in his cell house at the time of the call, so he was not seen (Doc. 56-5, p. 11). On June 27, 2017, Plaintiff reported to the nurses' sick call, but left when a nurse attempted to charge him the $5.00 copay (Doc. 56-5, p. 18). That same day, on June 27, Defendant Orkies left Big Muddy to become the Illinois Regional Manager for Wexford (Doc. 56-3, p. 3).

On June 28, 2017, Plaintiff requested to be seen at nurses' sick call, but then refused to be seen if he was going to be charged the $5.00 copay (Doc. 56-5, pp. 12-13).   Plaintiff returned to the HCU on June 30, 2017 (*Id.* at p. 14). He was seen by Defendant Prosise for epigastric burning and stinging. *Id.* Plaintiff was given a three-day supply of Tums and charged a $5.00 copay. *Id.* Plaintiff noted on the signed payment form that he was signing it "under duress" (Doc. 56-7, p. 10).

On July 6, 2017, Plaintiff was seen by Dr. Larsen for his heartburn and indigestion. During this visit, Plaintiff was prescribed a three-month supply of Pepcid and Tums (Doc. 56-5, pp. 15-16).[4] On July 8, 2017, Plaintiff was seen again by Defendant Prosise because

---

[4]  The parties agree that Plaintiff saw Dr. Larsen on July 6; however, the notes in the record detailing what occurred at this visit are indecipherable and illegible. As the parties agree this note details a doctor's visit, the Court will accept this fact as an undisputed fact for purposes of this Order.

he had not been issued the medications Dr. Larsen prescribed (*Id.* at p. 17). Defendant Prosise issued Plaintiff both Tums and Pepcid, and he was not charged a copay for this visit (Doc. 56-8, p. 1).

On July 11, 2017, Plaintiff was seen at the Chronic Clinic for Asthma and the Chronic Clinic for General Medicine (Doc. 56-5, pp. 62-63). GERD is listed as one of Plaintiff's diagnoses in the progress notes. *Id.*

On August 21, 2017, Plaintiff filed Grievance 28-9-17 (Doc. 56-7, p. 8). In this grievance, Plaintiff states the Defendant Prosise improperly charged Plaintiff a $5.00 copay on June 30, 2017 in retaliation for his June 19, 2017 letter (*Id.* at p. 9).   Plaintiff explained that his June 30 appointment was a follow-up appointment because he had been referred to the doctor by a nurse practitioner (Gerst) on May 31, 2017, but had not yet been seen by the time he went to nurses' sick call on June 30. *Id.* Therefore, Plaintiff stated that his June 30, 2017 appointment fell under the copay exception since it was a follow-up visit. *Id.*

An August 29, 2017 Health Status Transfer Summary for Plaintiff lists his chronic conditions/problems as ulcerative colitis, asthma, BPH, and GERD (Doc. 56-5, p. 60).

## LEGAL STANDARD

Summary judgment is proper when the moving party "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's

outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014)(citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Instead, "it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836.

## DISCUSSION

Presently before the Court are two separate motions for summary judgment: one filed by Defendants Prosise and Orkies; and another filed by Defendant Morgenthaler. The Court will address the motions separately below.

### I.  Defendants Prosise and Orkies' Motion for Summary Judgment

It is well-settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). It is also well-settled that an inmate has a First Amendment right to file grievances and lawsuits. *Id.*; *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). Plaintiff brings one claim against Defendants Prosise and Orkies. He claims they retaliated against him for writing his June 19, 2017 letter to the HCU Administrator by harassing him and charging him the $5.00 copay. In their motion for summary judgment, Defendants Orkies and Prosise argue that even when viewing the facts in the light most

favorable to Plaintiff, he has not established his retaliation claim and they are entitled to summary judgment.

At the summary judgment stage, the prisoner has the initial burden to make out a *prima facie* case of retaliation by showing that that he engaged in speech protected by the First Amendment, he suffered a deprivation likely to deter future protected activity, and the protected activity was at least a substantial or motivating factor in the defendants' actions. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). Only after the prisoner meets this initial burden does the burden shift to the defendants to show that they would have taken the same action in the absence of the protected conduct. *Thayer, 705 F.3d at 252; Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012); *Greene*, 660 F.3d at 980. If the defendants fail to counter the prisoner's evidence, then the defendants' retaliatory actions are considered a "necessary condition" of the prisoner's harm, and the prisoner has established the "but-for" causation needed to succeed on his claim. *Kidwell*, 679 F.3d at 965.

Here, the evidence before the Court is not sufficient for Plaintiff to make his *prima facie* case for retaliation against Defendants Prosise and Orkies. Even if Plaintiff were able to make his *prima facie* case, Defendants have shown that they would have taken the same action in absence of the protected conduct. As such, Defendants Prosise and Orkies' motion for summary judgment will be granted.

It is undisputed that Plaintiff wrote his June 19th letter[5], and filed approximately

---

[5] This letter does not name either Defendant Prosise or Orkies.

two subsequent grievances, about issues with the nursing staff and having to pay copays he believes were improper. The parties agree that filing grievances is a recognized, protected First Amendment activity. *See DeWalt*, 224 F.3d at 618. But the evidence, when viewed in the light most favorable to Plaintiff, does not demonstrate that Plaintiff suffered a deprivation likely to deter future protected activity.

Plaintiff contends that Defendants Orkies and Prosise decided to retaliate against him for writing his June 19, 2017 letter by charging him $5.00 copays, which (based on the record as a whole) occurred a total of three times on June 20, 2017, June 25, 2017, and June 28, 2017 (Doc. 56-5, pp. 12-14; 18). Plaintiff argues that this had a "chilling effect on [Plaintiff] as his hesitation to seek sick call and submit to a 5-dollar co-pay is clearly evident" (Doc. 69, p. 16). Plaintiff also argues that Defendants' actions would deter a person of "ordinary firmness from exercising free speech…but this [Plaintiff] is not of ordinary firmness." *Id.*

With respect to the co-pays, the record shows that any alleged retaliatory action by either Defendant Orkies or Prosise did not deter Plaintiff from seeking medical treatment. In fact, the record indicates that Plaintiff sought treatment regularly from the HCU for his acid reflux even after the June 20, 2017 interaction with Defendant Orkies, including on June 26, June 27, June 28, June 30, and finally, with the doctor, on July 6, 2017 (Doc. 56-5, pp. 11-16). While Plaintiff did not always see nurses at these visits (because he refused to pay the copay), the record does not indicate that Defendants Prosise and Orkies' actions had a chilling effect on Plaintiff's nurse sick call requests.

The record also does not support Plaintiff's assertion that Defendants Orkies and

Prosise's actions would deter a person of ordinary firmness from exercising their First Amendment rights. Even if the Court assumes Defendants engaged in retaliatory actions, Plaintiff continued to file grievances after being charged the $5.00 copays. In fact, Plaintiff filed grievances related to being charged copays for his GERD on June 25, 2017 and August 21, 2017, after writing his June 19, 2017 letter at issue (Doc. 56-7 pp. 12, 8). Plaintiff's IGRV Inmate History report details that in 2017 alone, Plaintiff filed twelve grievances total, nine of which were about issues at Big Muddy and three related to Hill (Doc. 56-7, p. 1). The record as a whole indicates that Defendants Orkies and Prosise's actions did not have a chilling effect on that Frist Amendment right.

Even if the Court determined that, when viewing the evidence in the light most favorable to Plaintiff, that he did assert his *prima facie* case to survive summary judgment, the burden then shifts to the Defendants to show that they would have taken the same action in the absence of the protected conduct. *Thayer, 705 F.3d at 252; Kidwell v. Eisenhauer,* 679 F.3d 957, 965 (7th Cir. 2012); *Greene,* 660 F.3d at 980. Defendants, and Plaintiff, have shown that there was a legitimate reason that Plaintiff was charged $5.00 copays.

Plaintiff testified that prison policy is to charge prisoners copays for ailments not deemed to be chronic by the facility's doctor (Doc. 56-1, p. 36). Plaintiff also testified that while the record documents his issues with GERD dating back many years while incarcerated at various facilities within the IDOC, he was not seen by a doctor at Big Muddy until a "few months" after he arrived, who then deemed GERD to be one of his chronic issues (Doc. 56-1, pp. 33-34). Defendant Orkies also highlighted this policy in his

affidavit, detailing that the copay charge was mandated by 730 ILCS 5/3-6-2 and IDOC policy (Doc. 56-2, p. 3). He noted it was not discretionary. *Id.* Furthermore, his understanding of the policy is consistent with Plaintiff's understanding. He detailed that prisoners at Big Muddy were not charged a copay if they were seen in the Chronic Clinic for chronic conditions "as declared by the Medical Director or other doctor at the facility" (Doc. 56-2, p. 3). The record is consistent with this policy as well. Plaintiff was charged, or a nurse attempted to charge Plaintiff, copays for his symptoms related to GERD on June 27, June 28, and June 30 (Doc. 56-5, pp. 12-14, 18). Plaintiff then saw the doctor at Big Muddy on July 6, where he noted in Plaintiff's medical records that GERD was a chronic condition (Doc. 56-5, pp. 15-16). On July 8, two days later, Plaintiff saw Defendant Prosise at nurse sick call for issues related to his diagnosis of GERD, and was *not* charged a copay (Doc. 56-8, p. 1).

While nurses at the HCU charged prisoners copays until 2020, the policy itself was not set by Wexford or the individual Wexford Defendants in this lawsuit. The copay charge is established by the IDOC and the statute. *See also Gaddis v. Walker*, No. 08-1067, 2010 WL 1416847, at *16 (C.D. Ill. Mar. 31, 2010) (finding that the $2.00 co-pay requirement was not established by Wexford; rather, was established by the IDOC and Illinois Administrative Code). The Court notes there are some inconsistencies in the record. For example, it appears that Plaintiff was not charged a copay for GERD treatment on 1-2 occasions when he first came to Big Muddy (Doc. 56-5, pp. 2, 6). Plaintiff was charged a copay in December 2017 for GERD treatment, even though he had already been diagnosed with GERD by the Big Muddy doctor (Doc. 56-5, p. 61). But these

inconsistencies in carrying out the IDOC copay policy alone are not enough to establish that Defendants Prosise and Orkies retaliated against Plaintiff. Ultimately, Plaintiff fails at summary judgment because he cannot demonstrate a causal connection between his letter and grievances, and being charged copays improperly. *Turley v. Rednour*, 555 F. App'x 606, 610 (7th Cir. 2014) (citing *Devbrow v. Gallegos,* 735 F.3d 584, 588 (7th Cir.2013)0; *Watkins,* 599 F.3d at 794.

For these reasons, the Court finds that Plaintiff has failed to establish his *prima facie* case that Defendants Prosise and Orkies engaged in retaliatory acts, and Defendants Prosise and Orkies are entitled to summary judgment.

## II.   <u>Defendant Morgenthaler's Motion for Summary Judgment</u>

Defendant Morgenthaler argues he is entitled to summary judgment because Plaintiff has failed to establish that he suffered an irreparable harm and, even if he did, Defendant Morgenthaler cannot implement any injunctive relief ordered by the Court because Plaintiff is now at a different facility within the IDOC (Doc. 67).

The Court finds it necessary to briefly recount the procedural posture of this case in relation to Defendant Morgenthaler in order to set the stage for its reasoning here. Defendant Morgenthaler was added as a Defendant on August 22, 2019 through the Court's Threshold Order for the purposes of implementing any injunctive relief (Doc. 7). Plaintiff filed one response to Defendants Prosise and Orkies', and Defendant Morgenthaler's, motions for summary judgment (Doc. 69). As best the Court can determine, Plaintiff did not assert any arguments in opposition to Defendant Morgenthaler's motion for summary judgment.

To obtain injunctive relief, Plaintiff had to prove that (1) he suffered an irreparable harm or injury, (2) there are inadequate remedies available at law to compensate for the injury, (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) the public interest would not be disserved by a permanent injunction. *Sierra Club v. Franklin Cty. Power of Illinois, LLC*, 546 F.3d 918, 935 (7th Cir. 2008) (citing to *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006)); *e360 Insight v. The Spamhaus Project,* 500 F.3d 594, 604 (7th Cir.2007). *See also Robinson v. Morris*, No. 18-CV-164-JPG, 2019 WL 7047231, at *5 (S.D. Ill. Dec. 23, 2019).

The Court has already determined that Plaintiff has not suffered an irreparable harm, so Defendant Morgenthaler's motion will be granted. But even if Plaintiff had been successful on the merits of his claim, Defendant Morgenthaler, the Warden of Big Muddy, cannot provide injunctive relief to Plaintiff, who is currently housed at Graham Correctional Center (Doc. 67-1, pp. 100-101; 112). If a prisoner is released or transferred to another prison, "his request for *injunctive relief* against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Manges v. Harman,* No. 3:11-CV-369, 2012 WL 3044261, *2 (N.D. Ind. July 24, 2012) (internal citations omitted). Therefore, the Court must determine whether Plaintiff is "likely to be retransferred," and "[a]llegations of a likely retransfer may not be based on mere speculation." *Id.* To succeed, Plaintiff must make a "showing or a demonstration of the likelihood of retransfer." *Id.* Plaintiff has not made *any* assertions that he is likely to be retransferred to Big Muddy. In addition, at least one Defendant (Orkies) is no longer

working there (Doc. 56-3). As such, Defendant Morgenthaler's motion for summary judgment is also granted.

<u>CONCLUSION</u>

The motions for summary judgment filed by Defendants (Docs. 55, 66) are **GRANTED**. This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 26, 2021**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**